| | |
|---|---|
| AMERICAN CONTRACTORS INDEMNITY COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| LEADCO, LLC, et al., | ) ) |
| Defendants. | ) |

No. 4:11-CV-2126 CAS

## MEMORANDUM AND ORDER

This matter is before the Court on the parties' cross motions for summary judgment. Plaintiff American Contractors Indemnity Company ("ACIC") moves for summary judgment against defendant Patty Lee. Defendant Patty Lee also moves for summary judgment and argues plaintiff cannot establish a claim against her. The motions are fully briefed and ready for disposition. For the following reasons, plaintiff's motion for summary judgment will be granted, and defendant Patty Lee's motion for summary judgment will be denied.

### I. Background

This is an action for indemnity. The action arises from a performance bond and a labor and material payment bond issued by ACIC as surety for Leadco, LLC, ("Leadco"), as principal, with respect to a construction contract Leadco had with the City of St. Louis. Prior to obtaining these bonds, Leadco, Gelhaar Lee, Patty Lee, and Mack E. McCain executed an indemnity agreement with ACIC, under which Leadco, Gelhaar Lee, Patty Lee, and Mack E. McCain agreed to indemnify and hold ACIC as surety harmless from claims and other expenses in connection with the bonds ACIC issued.

ACIC issued the bonds in question, as well as a number of others, and Leadco subsequently defaulted on the construction contract. The City of St. Louis demanded performance from ACIC. ACIC also received claims from a number of Leadco's employees and subcontractors on the construction project. ACIC paid on the bonds, and thereafter it demanded that Leadco, Gelhaar Lee, and Patty Lee indemnify ACIC and hold ACIC harmless by placing $461,482.17 in funds as collateral security sufficient to enable ACIC to meet the claims, liabilities and losses asserted against it under the bonds. Leadco, Gelhaar Lee, and Patty Lee failed to do so.

Plaintiff ACIC brought suit against Leadco, Gelhaar Lee, and Patty Lee, alleging breach of the indemnity agreement.[1] In the prayer for relief, ACIC requests that the Court enter judgment in its favor against Leadco and "the Lees," jointly and severally, in the sum of $299,888.20, plus interest, attorneys' fees and costs.

Defendant Patty Lee filed a pro se answer to the complaint, in which she stated that she was not responsible under the contract because she and Gelhaar Lee have since divorced, and following the divorce, Gelhaar Lee was responsible for Leadco's business.[2] Patty Lee attached a copy of the Judgment of Dissolution of Marriage to her answer.

Defendant Gelhaar Lee did not answer the complaint, but rather he filed a Suggestion of Bankruptcy, in which he stated that on December 29, 2011, he had filed for Chapter 7 Bankruptcy

---

[1]Plaintiff ACIC filed suit in this Court alleging there is federal diversity jurisdiction over its state law claims pursuant to 28 U.S.C. §1332.

[2]Defendant Patty Lee proceeded in this matter pro se, until she was appointed limited scope counsel for the purpose of ADR. Following mediation, Patty Lee's limited scope counsel, Louis Bonacorsi, entered a general appearance on her behalf, as did Jonathan B. Potts, who is from the same law firm, Bryan Cave, LLP.

in the United States Bankruptcy Court for the Eastern District of Missouri.[3] Defendant Leadco did

not respond to the complaint, and ACIC filed a motion for the clerk's entry of default against

Leadco, which was granted.

Plaintiff ACIC now moves for summary judgment against defendant Patty Lee. In its motion,

it argues that there is undisputed evidence that it is entitled to judgment as a matter of law as to its

claim for indemnity against Patty Lee in the amount of $243,361.00. Defendant Patty Lee also

moves for summary judgment. She argues that she is entitled to judgment as a matter of law on

three grounds: (1) ACIC's claim against her fails for lack of consideration; (2) her divorce from

Gelhaar Lee was a condition subsequent that eliminated all her obligations under the indemnity

agreement; and (3) enforcement of the indemnity agreement against her would be unconscionable.


## II.  Standard of Review

The standard applicable to summary judgment motions is well-settled.  Pursuant to Federal

Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the

information before the court shows "there is no genuine issue of material fact and the moving party

is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Ia. v. Associated Elec.

Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly

---

[3]The Court takes judicial notice of the fact that Mr. Lee disclosed his debt against ACIC, and gave notice to the Bankruptcy Court of the present litigation. See In re Gelhaar Lee, No. 11-53322, (Bankr. E.D. Mo. Dec. 29, 2011), Doc. 1 at 18, 39. The Court also takes judicial notice of the fact that on March 27, 2012, Mr. Lee was discharged from bankruptcy, with a finding that he had no property available for distribution from the bankruptcy estate over and above that exempted by law.  See In re Gelhaar Lee, No. 11-53322, (Bankr. E.D. Mo. Mar. 27, 2012), Doc. 18.

establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence he or she must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 quoting Anderson, 477 U.S. at 248. A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

In passing on a motion for summary judgment, it is not the court's role to decide the merits. The court should not weigh evidence or attempt to determine the truth of a matter. Rather, the court must simply determine whether a genuine issue of material fact exists. Bassett v. City of Minneapolis, 211 F.3d 1097, 1107 (8th Cir. 2000).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving the parties' motions for summary judgment.

### III. Facts[4]

Gelhaar Lee was a co-owner of Leadco, a construction company operating in the St. Louis metropolitan area. The nature of Leadco's business often required it to obtain surety bonds for the construction projects it was awarded. On or about April 3, 2006, Leadco applied to ACIC for surety bond credit. Defendant Patty Lee was married to Gelhaar Lee, co-owner of Leadco. On April 6, 2006, defendant Patty Lee met her husband and his Leadco business partner, Mack McCain, at a bank, where Gelhaar Lee instructed Ms. Lee to sign several documents. Included in these documents was an indemnity agreement entitled "General Indemnity Agreement," which Patty Lee understood ACIC required her to execute in order for Leadco to receive surety bonds from ACIC. Gelhaar Lee, Patty Lee, and Mack E. McCain all signed the General Indemnity Agreement.

Under the terms of the General Indemnity Agreement, Leadco, Gelhaar Lee, defendant Patty Lee, and Mack E. McCain agreed that "[i]n consideration of the execution and delivery by [ACIC] of a Bond or any Bonds on behalf of [Leadco], they, jointly and severally, would:

---

[4] In responding to a number of the paragraphs in defendant Patty Lee's Statement of Uncontroverted Facts, plaintiff made the following statement: "ACIC lacks any knowledge of information regarding the statements in paragraph No.___ and can neither confirm or deny the truth of those statements." See, e.g., Doc. 54 at 1. Defendant Patty Lee made similar responses to a number of paragraphs in ACIC's Statement of Uncontroverted Facts. This is not a proper response. Statements of Uncontroverted Facts are not like allegations in a complaint – either the statement of fact is disputed or it is not. If it is disputed, the opposing party must so state and provide proper evidence supporting its opposition. See L.R. 4.01(E). If the opposing party does not have evidence that contradicts a statement by the other side, and there is admissible evidence supporting the statement, such as an affidavit by the opposing party, the statement is deemed admitted for purposes of summary judgment. Id. ("[a]ll matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party").

indemnify and hold the [ACIC] harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses of whatever kind or nature together with interest thereon at the maximum rate allowed by law, which arise by reason of, or in consequences of, the execution by [ACIC] of any Bond on behalf of the [Leadco] and whether or not the [ACIC] shall have paid any sums in partial or complete payment thereof, including but not limited to:

2.1 Sums paid including interest thereon at the maximum rate allowed by law, or liabilities incurred in the settlement or adjustment or any and all claims, demands, damages, costs, losses, suits, proceedings, or judgments;

2.2 Expenses paid or incurred in connection with claims, suits, or judgments under such Bonds;

2.3 Expenses paid or incurred in enforcing the terms of this Agreement;

2.4 Expenses paid or incurred in procuring or attempting to procure release from liability under its Bond by [ACIC];

2.5 Expenses incurred in recovering or attempting to recover losses or expenses paid or incurred;

2.6 Attorney's fees and all legal expenses related to any items herein, including in-house attorney's fees, costs and expenses; investigation, accounting or engineering services;

2.7 Premiums on Bonds issued by [ACIC] on behalf of the [Leadco];

2.8 Monies advanced or loaned under this Agreement.

See Doc. 1, Ex. 1 at 1.

Under the terms of the General Indemnity Agreement, Leadco, Gelhaar Lee, defendant Patty

Lee, and Mack E. McCain also agreed that:

If a claim is made against [ACIC], whether disputed or not, of if [ACIC] deems it necessary to establish a reserve for potential claims, and upon demand from [ACIC], the Undersigned shall deposit with [ACIC] cash or other property acceptable to [ACIC], as collateral security, in a sufficient amount to protect [ACIC] with respect to such claim or potential claims and any expense or attorneys' fees. Such collateral may be held or utilized by [ACIC], (i) until it has received evidence of it's complete discharge from such claim or potential claims, (ii) until it has been fully reimbursed

6

for all loss, expenses, attorneys' fees and unpaid premiums; and (iii) until it has been fully discharged with regard to any liability in connection with any Bond issued by [ACIC]. If said collateral, or collateral previously deposited with [ACIC], is deemed insufficient by [ACIC], the Undersigned agrees to deposit additional or substitute collateral in an amount and type acceptable to [ACIC]. This may include the [ACIC]'s demand for cash collateral in substitution for Trust Deed collateral. The Undersigned further agrees to reimburse the [ACIC] for all attorney's fees, costs, expenses, etc., including any in-house attorney's fees, in the [ACIC]'s defense of any action brought by the Undersigned or anyone to effect the return or turnover of the Collateral.

Id. at 3.

The General Indemnity Agreement contained continuing obligations for Leadco, Gelhaar Lee, defendant Patty Lee, and Mack E. McCain, although a party could terminate his or her obligations under the contract with written notice. The agreement provided:

This Agreement is a continuing obligation of the Undersigned unless terminated by written notice to [ACIC] as hereinafter proved. Such termination by a particular Undersigned shall in no way affect the legal obligation of any other Undersigned who has not given such notice. In order to terminate liability as to future Bonds of [Leadco], an Undersigned must:

11.1.1 Give written notice by means of certified mail to [ACIC] at its office at 9841 Airport Boulevard 9th Floor, Los Angeles, California 90045; and

11.1.2 State in such notice of the effective date (not less than thirty day after receipt thereof of [ACIC]) of termination of such Undersigned's liability for future Bonds.

Id. at 4.

Defendant Patty Lee did not read or have any real understanding of the documents she signed at the bank on April 6, 2006.[5] According to defendant Patty Lee, no one explained the purpose of

---

[5]ACIC disputes this statement of fact, citing to defendant Patty Lee's answer to the complaint and her responses to ACIC's requests for admission. ACIC, however, did not allege in its complaint or ask in discovery that defendant Patty Lee admit that she read or understood the General

her visit to the bank, except that her signature was needed on the documents. Furthermore, Patty Lee was not provided with a copy of the documents she had signed when she left the bank that day.

From April 2006 through May 2010, ACIC issued a number of bonds on behalf of Leadco that were subject to the General Indemnity Agreement[6]. Defendant Patty Lee and Gelhaar Lee were divorced on October 10, 2008. Under the terms of the Lees' divorce, Gelhaar Lee retained all ownership interest in Leadco.[7]

On May 11, 2010, after the Lees' divorce was finalized, Leadco entered into Contract #19783 with the City of St. Louis in the amount $447,485.00 for the Residential Sound Insulation Program, Part 52, at Lambert-St. Louis International Airport ("Contract #19783"). Among other requirements, Contract #19783 required Leadco to complete window, door and HVAC upgrades at twenty-eight (28) homes around Lambert-St. Louis International Airport. The City of St. Louis required that Leadco post a surety bond to secure the payment to employees and subcontractors and suppliers for the moneys which might become due them in the performance of Contract #19783 work and the performance of Contract #19783 work itself by Leadco. On or about May 24, 2010,

_____

Indemnity Agreement. ACIC has pointed to no admissible evidence disputing this statement of fact.

[6]In her motion for summary judgment and memorandum in support, defendant Patty Lee asserted that ACIC did not issue bonds to Leadco during her marriage to Gelhaar Lee. ACIC disputed this assertion and provided evidence that it had issued 36 bonds to Leadco during the Lees' marriage, a fact that defendant Patty Lee concedes in her reply memorandum. See Doc. 57 at 4.

[7]ACIC disputes this statement of fact, stating that "the document of divorce decree speaks for itself." Indeed it does. On page 7 of the "Judgment of Dissolution of Marriage," Leadco, LLC is listed as "Marital Property to be Awarded to Husband." See Doc. 47, Ex. C at 7. No where in the Judgment of Dissolution of Marriage does it state that defendant Patty Lee received or retained an interest in Leadco, and there is no evidence elsewhere in the record that Patty Lee retained an interest in the company following the divorce.

Leadco applied to ACIC to obtain a surety bond to secure its performance of Contract #19783 and the payment for labor and materials furnished by employees and subcontractors and suppliers, and ACIC provided: (i) a performance bond as surety for Leadco as principal and delivery to City of St. Louis as oblige under Contract #19783 ("Performance Bond No. 1000818641") and (ii) a labor and material payment bond as surety for Leadco as principal and delivery to City of St. Louis as oblige under Contract #19783 ("Labor and Material Payment Bond No. 1000818641).

In January 2011, Leadco abandoned work under Contract #19783, leaving window, door, and HVAC upgrades at twenty-three (23) homes incomplete. On January 25, 2011, the City of St. Louis declared Leadco in default of Contract #19783 and demanded performance from ACIC. As of January 25, 2011, the City had paid Leadco the sum of $49,882.10 under Contract #19783, leaving a contract balance under Contract #19783 of $397,602.90.

Upon default of Leadco under Contract #19783, ACIC took steps to secure warehouse materials and learned that Leadco's lender, Reliance Bank, had a prior perfected security interest in the materials that Reliance Bank would not relinquish without compensation. On May 12, 2011, ACIC paid Reliance Bank the sum of $58,900.00 and acquired ownership of the materials. On April 13, 2011, ACIC entered into an agreement with Seals Enterprises as completion contractor to take over and complete the Leadco work under Contract #19783 for the sum of $304,924.34, which included bond and credit for the value of materials stored pre-default by Leadco (materials at warehouse and materials stored with Leadco's HVAC subcontractor Mr. Heating & Cooling, LLC), and payment to ACIC from contract funds in the amount of $92,678.56.

ACIC also received numerous claims from subcontractors. ACIC retained the consulting firm of C Comm Solutions, Inc. and the law firm Elizer & Myerson, L.L.C. for investigation and resolution of claims. ACIC has made the following payments:

- $6,475.56 paid to former Leadco employees for pre-default unpaid wages and for withholding taxes on said pre-default wages;

- $118,360.18 paid on May 10 , 2011, to Sound Solutions Windows & Doors, LLC, a supplier to Leadco under Contract #19783;

- $26,115.00 paid on May 31 , 2011, to PEM Millwork of Minnesota, Inc., a supplier to Leadco under Contract #19783;

- $52,757.34 paid via two payments on March 3 , 2011, and May 5, 2011, to Mr. Heating & Cooling, LLC, a subcontractor to Leadco under Contract #19783;

-  $2,193.94 paid on October 6 , 2011, to Mac's Mechanical & Electric, an electrical subcontractor to Mr. Heating & Cooling, LLC;

- $23,738.00 paid on November 22, 2011, jointly to LS Building Products and Mon-Ray, Inc.; and

- $34,262.00 paid on November 22, 2011, to LS Building Products.

ACIC paid Elizer & Meyerson, L.L.C. the sum of $76,443.68. ACIC paid C Comm Solutions, Inc. the sum of $37,123.50.

On or about March 3, 2011, Mack E. McCain filed a Voluntary Petition for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the Eastern District of  Missouri.  As of November 8, 2013, ACIC has been paid the sum of $41,429.64 from the Plan of Reorganization filed in the Chapter 11 Bankruptcy of Mack E. McCain.

On May 10, 2011, ACIC's attorney, Steven H. Elizer, sent a letter to Gelhaar and Patty Lee. In the letter, Mr. Elizer demanded that, pursuant to the terms of the General Indemnity Agreement, the Lees remit payment in the amount to $461,482.17, as collateral security sufficient to enable

ACIC to meet the described claims, liabilities and losses asserted under Bond No. 1000818641. Defendant Patty Lee does not recall receiving this letter. The Lees have not remitted any payment to ACIC.

## IV. Discussion

Plaintiff ACIC and defendant Patty Lee have filed cross motions for summary judgment. Plaintiff argues that this case is a simple breach of contract, and that the undisputed facts show the General Indemnity Agreement is a contract, ACIC performed on the contract, defendant Patty Lee breached her duties under the contract, and ACIC was damaged as a result. Defendant Patty Lee does not dispute that there was a breach or that ACIC was damaged, but rather, she argues that she is not liable under the General Indemnity Agreement for three alternative reasons: (1) as to her, there was lack of consideration as to the agreement; (2) her divorce was a condition subsequent that relieves her of her obligations under the contract; and (3) the contract is unconscionable as applied to her.[8]

---

[8]ACIC argues in response to defendant Patty Lee's motion for summary judgment that Ms. Lee should be precluded from raising these three issues because they were not pleaded as affirmative defenses in her answer to the complaint. As to her first defense, consideration is a element of a breach of contract claim, and it need not be pleaded as an affirmative defense. Davidson & Schaaff, Inc. v. Liberty Nat. Fire Ins. Co., 69 F.3d 868, 871 (8th Cir. 1995). As for the two additional defenses she raises, the Court agrees they should have been pleaded as affirmative defenses in answer, but at the time she filed her answer defendant Patty Lee was proceeding pro se. Counsel did not enter a general appearance on her behalf until relatively late in these proceedings. "Rule 8(c) is not an absolute bar to a party's belated attempt to plead an affirmative defense." Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 715 (8th Cir. 2008). The Court will liberally construe defendant Patty Lee's answer and consider her arguments. Based on her answer, in which Ms. Lee averred that she should not be held liable because she was divorced and had no interest in Leadco, the defenses should not have come as an "unfair surprise" to ACIC. First Union Nat'l Bank v. Pictet Overseas Trust Corp., 477 F.3d 616, 622 (8th Cir. 2007). The Court also notes that plaintiff was able to adequately respond to the defenses in its response memorandum, therefore, the Court finds that ACIC will not be unfairly prejudiced by the Court's consideration of these defenses.

**A. The General Indemnity Agreement Does Not Fail for Lack of Consideration.**

Under California law, indemnity agreements are fully enforceable contracts.[9] Travelers Casualty & Sur. Co. of Am. v. Desert Gold Ventures, 2010 WL 5017798, at *2 (C.D. Cal. Nov. 19, 2010) (quoting Commercial Ins. Co. v. Pacific-Peru Const. Corp., 558 F.2d 948, 953 (9th Cir. 1977)). See also St. Paul Fire & Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co., 124 Cal. Rptr. 2d 818, 824 (Cal. Ct. App. 2002) (indemnity agreements are construed under the general principles of contract interpretation). As indemnity agreements are contracts, the "court is to 'give effect to the mutual intention of the parties as it existed at the time of contracting,' and '[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.'" Travelers Casualty, at *2 (quoting Cal. Civ. Code §§ 1636, 1638).

Under California law, the essential elements of a contract are: "(1) Parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration." Cal. Civ. Code § 1549. A contract of indemnity gives rise to no rights in the parties if consideration is wanting. Ms. Lee argues that as to her, the General Indemnity Agreement fails for lack of consideration because she received nothing of value for signing the agreement. A written contract, however, "is presumptive evidence of consideration," and the burden of showing lack of consideration lies with Ms. Lee, "as the party seeking to invalidate or avoid it." Cal. Civ. Code §§ 1614 and 1615.

---

[9]The General Indemnity Agreement contains a California choice of law provision. For purposes of summary judgment, no party has challenged the choice of law provision, and both sides have cited to California law in their arguments.

Consideration is:

> Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.

Cal. Civ. Code. § 1605. Consideration is sufficient if there is a benefit to the indemnitor, or prejudice suffered by the indemnitee. Id.

Under the terms of the General Indemnity Agreement, defendant Patty Lee agreed to indemnify ACIC in exchange for ACIC executing and delivery a bond or any bonds on behalf of Leadco. More specifically:

> In consideration of the execution and delivery by [ACIC] of a Bond or any Bonds on behalf of [Leadco], the Undersigned agree to indemnify and hold [ACIC] harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses of whatever kind or nature together with interest thereon at the maximum rate allowed by law, which arise by reason of, or in consequences of, the execution by the [ACIC] of any Bond on behalf of [Leadco] and whether or not the [ACIC] shall have paid any sums in partial con complete payment thereof . . .

See Doc. 1, Ex. 1 at 1.

In Patty Lee's opening Memorandum in Support of Summary Judgment, she does not dispute that she made this promise, but she argues that she did not receive any benefits under the General Indemnity Agreement because ACIC did not issue any bonds that would be covered by the General Indemnity Agreement during her marriage to Gelhaar Lee, and that the bonds at issue in this case were issued after her divorce, when she had no interest whatsoever in Leadco or the bonds. Therefore, according to defendant Patty Lee, she received no consideration.

ACIC responded to Patty Lee's argument by showing that she was mistaken as to the facts. ACIC clearly demonstrated, and Patty Lee did not dispute in her reply, that ACIC issued for the

benefit of Leadco a number of bonds covered by the General Indemnity Agreement during the time defendant Patty Lee was married to Gelhaar Lee. Therefore, according to ACIC, there was more than adequate consideration for the General Indemnity Agreement, and Ms. Lee reaped the benefit of that consideration while she still had an interest in Leadco.

Patty Lee replies that the fact bonds were issued during her marriage is of no import in deciding this dispute because there was no consideration given for the particular bonds at issue. In other words, she argues that in order for the General Indemnity Agreement to be enforceable, new consideration is required for every bond ACIC issued. She writes that ACIC's indemnity claim fails because plaintiff has not explained "what consideration Ms. Lee received for the bonds for which it actually seeks indemnification." See Doc. 57 at 5.

The issue before the Court is not whether there was consideration for each of the bonds. The issue is whether there was consideration for the General Indemnity Agreement, and it is Patty Lee's burden to show there was no consideration. ACIC issued its first bond while Patty Lee was still married, and she received a benefit therefrom. Under the written terms of the contract, consideration is ACIC's issuance of "a [b]ond or any [b]onds." See Doc. 1, Ex. 1 at 1 (emphasis added). Any one of the bonds ACIC issued for Leadco provided adequate consideration for the General Indemnity Agreement under California law because "[a] single consideration may support several counter-promises." H. S. Crocker Co., Inc., v. McFaddin, 307 P.2d 429, 433 (Cal. Ct. App. 1957). See also 14 Cal. Jur. 3d Contracts § 126 ("where there is consideration for any of the agreements specified in a contract, the contract as a whole cannot be said to lack consideration"). There is nothing in the language of the General Indemnity Agreement which would require that Ms. Lee have an interest in each and every bond, and Ms. Lee has provided the Court with no legal authority in support of

her position that she must receive consideration for each of the bonds. It was contemplated and expressly written in the contract that the indemnitors had continuing obligations under the General Indemnity Agreement, unless they provided written notice of termination, which Patty Lee did not do. The Court finds that the General Indemnity Agreement does not fail for want of consideration.

**B.      The Divorce Was Not a Condition Subsequent.**

As an alternative theory, defendant Patty Lee argues that she is not liable under the General Indemnity Agreement because her divorce operated as a condition subsequent to relieve her of any contractual obligations under the agreement.  "A condition subsequent refers to a future event upon the happening of which the obligation becomes no longer binding on the party in whose favor the condition was created if he chooses to enforce it."  Lowe v. Copeland, 13 P.2d 522, 528 (Cal. Ct. App. 1932) (citing to Cal. Civ. Code § 1438).  See also 13 Williston on Contracts § 38:9 (4th ed.) ("[a] condition subsequent has been defined as a future event, the happening of which discharges the parties from their otherwise binding agreement"). The intent to create a condition subsequent "must appear expressly or by clear implication" in the contract, but no precise words are required. Lowe, 13 P.2d at 525 (citing to Firth v. Los Angeles Pac. Land Co., 152 P. 935 (Cal. Ct. App. 1915); Firth v. Marovich,116 P. 729 (Cal. Ct. App. 1911).  See also Langford v. Eckert 88 Cal.Rptr. 429, 432 (Cal. Ct. App. 1970).

It is undisputed that there was no express condition subsequent regarding defendant Patty Lee's martial status in the General Indemnity Agreement.  Therefore, the issue is whether a condition subsequent was "clearly implied." Lowe, 13 P.2d at 525.  Defendant Patty Lee argues that she signed the General Indemnity Agreement in the capacity of a spouse of a co-owner of Leadco. She argues that there was "an understanding which existed as an implicit terms of the contract," that

"her marriage was the sole basis for her execution of the contract." <u>See</u> Doc. 48  at 9 and 10. According to defendant Patty Lee, while she was married she did have a marital interest in Leadco, but with her divorce, she was reduced to "a standard third party." <u>Id.</u>  In sum, she argues that at the time the General Indemnity Agreement was executed, there could be no understanding that she, who was signing in the capacity of a spouse, would remain liable for Leadco's defaults on its surety bonds following her divorce.  ACIC responds that there was no such understanding.

After reviewing the evidence submitted by the parties, the Court finds that there is no evidence that the parties intended to create a condition subsequent.  The only evidence defendant has offered in support of finding that there was an implied condition subsequent was the fact that she was the wife of a co-owner of the principal.  Ms. Lee is essentially asking that the court find, without additional evidence, that her status as a spouse alone created the "clear implication" that her obligations under the contract terminated upon her divorce.  The Court finds defendant Patty Lee's position is not supported by California law.

In support of her argument, defendant Patty Lee cites to <u>Lindsey v. Clossco</u>, 642 F. Supp. 250 (D. Ariz. 1986).  In this case, which was decided by a federal district court sitting in Arizona applying California law, the plaintiff, who was the head coach of the University of Arizona's mens basketball team, had entered into a contract with a shoe distributor, under which the coach was paid to direct the team to wear certain athletic shoes during games. <u>Id.</u> at 251. A year later, the university terminated plaintiff's employment, but plaintiff continued to make demands for further payments under the contract.  <u>Id.</u>  The district court concluded that plaintiff's termination as head coach operated as a condition subsequent that extinguished the shoe distributor's obligations to perform under the contract.  The court wrote: "It is clear from the nature of the agreement that it was entered

into subject to the implied condition subsequent that it should be binding only if [plaintiff] remained head basketball coach at the University of Arizona." Id. at 255. The court reached this conclusion based on the fact that the contract referred to plaintiff as "coach" and "Head Basketball Coach, University of Arizona," and that the services plaintiff was to perform under the contract, for example, "'encouraging' or promoting by his best efforts the use of [A]didas basketball shoes by the University of Arizona basketball team, were of such character that they could be performed effectively only if [plaintiff] retained the position of head basketball coach at the University." Id.

In the case at bar, the General Indemnity Agreement does not refer to defendant Patty Lee as a wife or spouse. She is simply an undersigner of the contract. What is more, the services defendant Patty Lee is to perform under the indemnity agreement – holding ACIC harmless – are not rendered impossible by her divorce. The fact that she is no longer married to Gelhaar Lee does not prevent defendant Patty Lee from being able to perform under the contract. The facts of this case are not analogous to those in Lindsey, and the Court cannot conclude that based on the nature of the contract, the parties intended that the Lee's divorce would be a condition subsequent that would relieve defendant Patty Lee of her obligations under the contract.

The facts of the present case are closer to the facts in Langford v. Eckert, 88 Cal. Rptr. 429 (Cal. Ct. App. 1970). In Langford, a son-in-law agreed to co-sign a promissory note secured by the deed of trust of his in-laws' home. Id. at 430. The son-in-law, who was a doctor returning from military service, and his wife and family were living with his wife's parents, and improvements on the home were needed to accommodate the whole family. Id. The in-laws obtained a second mortgage on their home to finance the improvements, and the son-in-law agreed to co-sign the note. Id. Subsequently, however, the doctor's marriage soured, and his wife asked for a divorce. As a

result of the divorce, he had absolutely no future interest in the home.  Id. The former in-laws sued the doctor for payments on the house.  The doctor argued to the California Court of Appeals that the divorce was a condition subsequent that discharged him from further obligations under the note.  Id. 432.  The Court of Appeals disagreed and found there was no express or implied condition subsequent in the contract that relieved him of his obligations following the divorce.  The doctor, who no longer had any interest in the house, was required to continue to make mortgage payments for his former in-laws.  Id.

Like the facts in Langford, there is no evidence in the present case that the parties intended divorce to be a condition subsequent that would end defendant Patty Lee' obligations under the General Indemnity Agreement.  A change in marital status alone is not enough for the Court to find there was a clearly implied condition subsequent. Langford, 88 Cal. Rptr. at 432.

### C.    The General Indemnity Agreement Was Not Unconscionable.

As her third defense, defendant Patty Lee argues that the General Indemnity Agreement should not be enforced against her because it is unconscionable.  She argues that the contract was a contract of adhesion in that it was a standard form provided by ACIC to defendant Patty Lee with her name already filled in.  She asserts that ACIC was in the superior bargaining position, and that she had no opportunity to bargain regarding the terms of the contract.  According the defendant Patty Lee, the indemnity agreement was a contract of adhesion that exposed her to "unlimited liability," and, therefore, it is unconscionable to enforce it against her.  See Doc. 48 at 11.

Under California law, "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it

may so limit the application of any unconscionable clause as to avoid any unconscionable result." Cal Civ. Code § 1670.5. The fact that an agreement is a contract of adhesion does not make it <u>per se</u> unconscionable and <u>ergo</u> unenforceable. Contracts of adhesion are "facts of modern life that are generally enforced." <u>Gentry v. Superior Court</u>, 165 P.3d 556, 573 (Cal. 2007). Courts are to examine procedural and substantive elements of the contract at issue, including contracts of adhesion, to determine whether the contract is unconscionable and should not be enforced. In <u>Armendariz v. Foundation Health Psychcare Services, Inc.</u>, 6 P.3d 669 (Cal. 2000), the California Supreme Court explained the analysis courts are to employ for determining whether a contract is unconscionable under California law:

> [U]nconscionability has both a "procedural" and a "substantive" element, the former focusing on "oppression" or "surprise" due to unequal bargaining power, the latter on "overly harsh" or "one-sided" results. . . . [B]oth [must] be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. But they need not be present in the same degree. Essentially a sliding scale is invoked . . . the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.

<u>Armendariz</u> 6 P.3d at 690 (quoting <u>Stirlen v. Supercuts</u>, 60 Cal.Rptr.2d 138 (Cal. Ct. App. 1997). Contracts of adhesion do "contain a degree of procedural unconscionability even without any notable surprises, and 'bear within them the clear danger of oppression and overreaching.'" <u>Gentry</u>, 165 P.3d at 572. But "a finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided." <u>Id.</u>

Defendant Patty Lee's arguments regarding unconscionability are, for the most part, limited to procedural elements – her bargaining position and lack of ability to negotiate. As for the substantive element, Ms. Lee does not argue that her obligations under the General Indemnity

Agreement are unconscionable, for example, she does not object to the fact that under the contract she has a duty to indemnify ACIC, but rather she objects to the fact that her duty to indemnify continued indefinitely, and more specifically that the duty continued even after she was divorced. The Court does not find Patty Lee's arguments regarding the substantive element of the contract to be persuasive. As ACIC points out, Ms. Lee's obligations under the General Indemnity Agreement did not have to continue indefinitely. While they were ongoing, she could have terminated her obligations under the contract for any reason at any time. Section 11 of the General Indemnity Agreement ("Termination"), sub-Section 11.1 provides, in pertinent part: "This Agreement is a continuing obligation of the Undersigned unless terminated by written notice to [ACIC] has hereinafter provided." Doc. 1, Ex. 1 at 4. It is undisputed that defendant Patty Lee did not avail herself of the right to terminate her obligations under the General Indemnity Agreement.

Defendant Patty Lee responds that this provision is of no import because she did not receive a copy of the General Indemnity Agreement, therefore, she was unable to take advantage of the termination provision. But the fact that Ms. Lee did not have a copy of the agreement was not the fault of ACIC and this fact is not dispositive. The General Indemnity Agreement was signed in counterparts. Defendant Patty Lee signed the contract at a bank in St. Louis. There is no evidence that Ms. Lee was prevented from receiving a copy of the contract, or that she even asked for one. Furthermore, defendant Patty Lee has provided the Court with no authority for the notion that failure to possess a copy of a contract relieves one of ones duties under the contract.

It is also not a defense that defendant Patty Lee did not read the General Indemnity Agreement. "One who signs an instrument which on its face is a contract is deemed to assent to all its terms. A party cannot avoid the terms of a contract on the ground that he or she failed to read

it before signing it." <u>Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.</u>, 107 Cal. Rptr. 2d 645, 648 (Cal. Ct. App. 2001). "Reasonable diligence requires a party to read a contract before signing it." <u>Brown v. Wells Fargo Bank, NA</u>, 85 Cal. Rptr. 3d 817, 834 (Cal. Ct. App. 2008). Although Ms. Lee signed the General Indemnity Agreement at the request of her husband, it was unreasonable for her not to have read it. Furthermore, Ms. Lee has not alleged that her husband forced her to sign the agreement, and there are no allegations of mistake, duress, fraud, or undue influence.

While there are elements of procedural unconscionability present here, the Court does not find that the General Indemnity Agreement was substantively unconscionable. It was not "manifestly unfair or one-sided." <u>Gentry</u>, 165 P.3d at 573. This is particularly true because defendant Patty Lee could have terminated the agreement at any point. The fact that defendant Patty Lee was not aware of this provision and did not have a copy of the agreement is unfortunate, but these facts are not defenses, and they do not make the contract unconscionable such that it is unenforceable.

### D. Plaintiff Has Established a Breach of Contract Claim.

Plaintiff ACIC moves for summary judgment against defendant Patty Lee arguing that the undisputed facts show that there was contract formation, performance under the contract, and breach. Defendant Patty Lee does not dispute that there was a breach, that ACIC was damaged by the breach, or the amount of damages. In opposition to ACIC's motion for summary judgment she merely reiterated the defenses she raised in her own motion for summary judgment.

As stated above, indemnity agreements are enforceable contracts under California law. <u>Mel Clayton Ford v. Ford Motor Co.</u>, 127 Cal. Rptr. 2d 759, 762 (Cal. Ct. App. 2002) ( "Indemnity is

a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person."). Under California law, a plaintiff asserting a breach of contract claim must prove (1) the existence of a contract, (2) performance by the plaintiff or excuse for nonperformance, (3) breach by the defendant, and (4) damage resulting from the breach. First Comm. Mort. Co. v. Reece, 108 Cal.Rptr.2d 23, 33 (Cal. Ct. App. 2001). Plaintiff alleges that defendant Patty Lee's failure to indemnify losses and to provide collateral security for future liabilities breached the terms of the General Indemnity Agreement.

The undisputed evidence shows defendant Patty Lee, together with Leadco, Gelhaar Lee, and Mack E. McCain, executed the General Indemnity Agreement. ACIC issued the performance bond and the labor and material payment bond. Leadco defaulted on Contract #19783 and the City of St. Louis demanded performance from ACIC, and ACIC performed. Additionally, Leadco failed to pay a number of its employees and subcontractors, and ACIC paid the employees and subcontractors. ACIC demanded that Leadco, Gelhaar Lee, and defendant Patty Lee indemnify ACIC and hold ACIC harmless by placing in funds $461,482.17 as collateral sufficient to enable ACIC to meet the claims, liabilities and losses asserted against it under the bonds. Leadco, Gelhaar Lee, and defendant Patty Lee failed to make payment, thereby breaching their duties under the General Indemnity Agreement to hold ACIC harmless.

Plaintiff ACIC has presented evidence that it was damaged as a result of the breach in the amount of $243,361.00. Defendant Patty Lee did not dispute the amount of the damages. Based on the record before it, the Court finds plaintiff ACIC is entitled to summary judgment as to its claim of breach of contract against defendant Patty Lee. The undisputed evidence establishes the parties entered the General Indemnity Agreement, which is an enforceable contract, ACIC performed under

23

the contract by providing bonds to Leadco, defendant Patty Lee and the other undersigners breached their duties under the contract by failing to hold ACIC harmless for the amount ACIC paid on the bonds following Leadco's default, and ACIC was damaged as a result of the contract in the amount of $243,361.00.

## V. Conclusion

The Court finds defendant Patty Lee is not entitled to summary judgment. Despite her assertion to the contrary, there was adequate consideration under on the General Indemnity Agreement. It is undisputed that ACIC issued bonds as consideration, including a number of bonds that were issued during her marriage to Gelhaar Lee. The fact that the relevant bonds were not issued until after her divorce does not negate the consideration already conferred to defendant Patty Lee under the contract. The Court further finds that defendant Patty Lee has not met her burden of establishing that her divorce was a condition subsequent that relieved her of her obligations under the contract. There is no language in the contract establishing a condition subsequent, and there was no evidence that the parties intended that divorce be a condition subsequent. Defendant Patty Lee has also failed to establish that the contract is both procedurally and substantively unconscionable. Even if the Court were to find the General Indemnity Agreement was procedurally unconscionable, the Court cannot find that the contract was substantively unconscionable because defendant Patty Lee could have terminated the contract at any time.

The result in this case is harsh, very harsh, especially because it would seem that the more culpable defendants are insolvent. But the harshness does not stem from the terms of the contract or how it was formed. Ms. Lee is on the hook because she failed to read or obtain a copy of the contract – both of which are not excuses or defenses under the law. The Court is not unsympathetic,

and in fact it questions why ACIC is pursuing a woman who works as a waitress in a diner and has virtually no assets – facts that supported her informa pauperis status. But it is the duty of this Court to apply the law. The undisputed facts establish that a contract was formed with adequate consideration; ACIC performed on the contract; and defendant Patty Lee, along with others, breached their duties under the contract. Plaintiff has established to the Court's satisfaction its damages, which defendant Patty Lee has not challenged. In sum, plaintiff is entitled to summary judgment against defendant Patty Lee.

As for the remaining defendants. Defendant Gelhaar Lee did not answer the complaint, but rather he filed a Suggestion of Bankruptcy, in which he stated that on December 29, 2011, he had filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Eastern District of Missouri. The Court takes judicial notice of the fact that Mr. Lee disclosed his debt against ACIC, and gave notice to the Bankruptcy Court of this pending litigation. See In re Gelhaar Lee, No. 11-53322, (Bankr. E.D. Mo. Dec. 29, 2011), Doc. 1 at 18, 39. It also takes judicial notice of the fact that on March 27, 2012, Mr. Lee was discharged from bankruptcy with a finding that he had no property available for distribution from the bankruptcy estate over and above that exempted by law. See In re Gelhaar Lee, No. 11-53322, (Bankr. E.D. Mo. Mar. 27, 2012), Doc. 18. Therefore, the Court will issue an entry of dismissal as to defendant Gelhaar Lee.

Defendant Leadco was served with the complaint, but failed to respond. On plaintiff's motion, the Clerk of Court entered default against defendant Leadco on January 23, 2012. Plaintiff will have fourteen (14) days from the date of this Memorandum and Order to move for the entry of default judgment against defendant Leadco. If plaintiff fails to move within the time allowed, the Court will dismiss defendant Leadco and enter judgment in this case.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Patty Lee's motion for summary judgment is **DENIED.** [Doc. 46]

**IT IS FURTHER ORDERED** that plaintiff American Contractors Indemnity Company's motion for summary judgment against defendant Patty Lee is **GRANTED.** [Doc. 49]

**IT IS FURTHER ORDERED** that plaintiff American Contractors Indemnity Company shall, within fourteen (14) days of the date of this order, file a motion for default judgment against Leadco, LLC under Rule 55(b). The motion shall be supported by all necessary affidavits and documentation, as well as proposed orders for the Court's consideration.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 27th day of March, 2014.